**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| FORT BEND COUNTY, FORT BEND COUNTY DRAINAGE DISTRICT, and CINCO MUNICIPAL UTILITY DISTRICT NO. 1, | § § § | |
| Plaintiffs, | § | |
| v. | § § | |
| THE UNITED STATES ARMY CORPS OF ENGINEERS; LT. GENERAL TODD T. SEMONITE, in his official capacity, Commanding General and Chief of Engineers, United States Army Corps of Engineers; COL. LARS ZETTERSTROM, in his official capacity, District Engineer Commanding Officer, Galveston District, United States Army Corps of Engineers; RICHARD LONG, in his official capacity, Supervisory Natural Resource Manager, Addicks/Barker, United States Army Corps of Engineers, | § § § § § § § § § § § § § § | C.A. NO.   4:18-CV-1739 |
| Defendants. | | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND**
**PERMANENT INJUNCTION**

Fort Bend County ("Fort Bend"), Fort Bend County Drainage District ("FBCDD"), and

Cinco Municipal Utility District No. 1 ("Cinco MUD") (collectively "Plaintiffs") file this

Amended Complaint, as Ordered by the Court, seeking declaratory and permanent injunctive relief

(no damages) regarding the United States Army Corps of Engineers' (the "Corps") operation of

the Addicks and Barker Reservoirs and Dams (collectively, the "Reservoirs").

## I.      PARTIES

1.      Plaintiffs Fort Bend and FBCDD are each political subdivisions of Texas created

in 1837 and 1949 respectively.  Plaintiff Cinco MUD is also a political subdivision of Texas.  Fort

Bend, FBCDD, and Cinco MUD each own or control property upstream of and within the "Fringe

Areas" of the Barker Reservoir and bring this action in their own capacities based upon irreparable

harm to the property, environment, economy, and welfare of the County and the Districts as a proximate result of the acts and omissions alleged herein.

2.      Defendant the U.S. Army Corps of Engineers (the "Corps") is one of the basic branches of the U.S. Army and is responsible for maintaining and operating the Reservoirs.

3.      Defendants Lt. General Todd T. Semonite (Commanding General and Chief of Engineers), Col. Lars Zetterstrom (District Engineer Commanding Officer, Galveston District), and Richard Long (Supervisory Natural Resource Manager, Addicks/Barker), and their predecessors and successors, are sued in their official capacities for authorizing the Corps' acts and omissions alleged herein.

## II.      JURISDICTION AND VENUE

4.      28 U.S.C. § 1331(a) gives the Court exclusive jurisdiction over this challenge to agency action arising under federal law.  The Court has jurisdiction to award injunctive relief to compel an officer of the U.S. to perform his duty pursuant to 28 U.S.C. § 1361 and may challenge agency action pursuant to 5 U.S.C. §551 and 5 U.S.C. §§ 701-708, the Administrative Procedure Act ("APA").  5 U.S.C. § 702 waives sovereign immunity of the U.S. for suits seeking declaratory and injunctive relief or to review a final agency action, or failure to act.  28 U.S.C. § 2201 provides jurisdiction to issue declaratory relief.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of the property that is the subject of the action is situated in this District.

## III.      FACTS

6.      The Reservoirs are federal flood control projects located in western Harris County and eastern Fort Bend County, Texas.  From their inception, the Reservoirs were each designed

and constructed by the Corps to have a designated capacity to detain and store federally controlled floodwaters (a "Maximum Design Pool" or "MDP")[1] that exceeds the boundaries of land within the Reservoirs that is owned by the United States ("Government-Owned Lands" or "GOL").  The Reservoirs' current Maximum Design Pool ("MDP") elevations have been identified by the Corps at 115 feet above North American Vertical Datum of 1988, adjustment of 2001 ("NAVD88") for Addicks Dam and 108 feet for Barker Dam.[2]

7.     The Corps purchased fee simple title to only about 12,460 acres of property behind the Addicks Dam and only about 12,060 acres of property behind Barker Dam.  The Corps owns the land from the base of the Addicks Dam up to an elevation of only 103.1 feet and the land extending from the base of Barker Dam up to an elevation of only 95 feet.  As the Corps' 1995 study admits, the upper limits of the GOL in both Reservoirs are well short of the MDP.  Thus, the Corps has always known and intended that in the event of a maximum design weather event, the Reservoirs would each inundate upstream private property and other land that is not GOL.

8.     The Corps' November 2012 Water Control Manual for the Reservoirs (the "WCM"), acknowledged the "Special Problem" that floodwaters within the Reservoirs could exceed the GOL and damage private property.  Nevertheless, since their adoption of the WCM, Defendants failed to obtain the property rights for the storage of floodwaters on private property within the "Fringe Areas" above the limits of the GOL and below the MDP.

9.     Even after impounded floodwater exceeded the limits of the GOL during both the April 2016 Tax Day Flood and during and for weeks after Hurricane Harvey in 2017 (hereafter

---

[1] The Corps planned the Maximum Design Pools within the Reservoirs to equate with the approximate acreage behind the dams that the Corps anticipated would be flooded during an anticipated "Maximum Design Storm."

[2] Throughout this Complaint, all references to elevations are to NAVD88.

3

collectively referred to as the "2016/17 Flood Events"), the Corps failed to (a) act to purchase property or to otherwise obtain property rights to store floodwaters on private property located within the "Fringe Areas," and/or (b) adopt operations procedures in the WCM that would limit the water storage in the Reservoirs to the boundaries of the GOL.

10.     The Corps took specific action and implemented finally-determined WCM "Standing Instructions" that the Corps knew would increase the likelihood that stormwater impounded within the Reservoirs would exceed the limits of the GOL, without taking into consideration the rights of or the Corps' duties to persons upstream of the Reservoirs.  The "Standing Instructions" require the Dam Tender to jeopardize persons upstream of the GOL regardless of the known, imminent, and irreparable impacts to Plaintiffs.

11.     Following the directives mandated by the WCM's "Standing Instructions," the Corps operated the Reservoirs during the 2016/17 Flood Events to deliberately impound detained floodwater on non-federal GOL and failed to act to hasten the release of the floodwater downstream until it became apparent that the dam structures themselves might fail.

12.     As a result, Plaintiffs' property, facilities, and equipment and that of their residents became involuntary repositories for unsanitary Reservoir water for an extended period.

13.     Among other harms it suffered, Cinco MUD's South Water Treatment Plant was filled with flood water and its lift stations were inundated for days resulting in contamination and property damage, loss of sanitary sewer service, and water and sewer service revenues.

14.     FBCDD's channel at Willow Fork also flooded and was filled-in with 294,347 cubic yards of silt that had to be dredged at a past and future cost of approximately $2,807,556.

15.     Fort Bend's property was also flooded and consequently it incurred significant expense to clear roadways of flood debris.  The County incurred contamination and costs to remove debris from County roadways and from the homes of County residents.

16.     More significantly, Plaintiffs have been irreparably impacted by the dramatic reduction in property values within their jurisdictions and by the displacement of residents and customers from their boundaries, many of whom had to seek indefinite extended-term refuge or permanent relocation outside the County.  This devaluation and displacement has caused significant reductions in Plaintiffs' revenues and tax receipts at the same time Plaintiffs have had to increase their spending for infrastructure repairs and disaster recovery.

17.     Defendants' actions and failures to act not only exceeded their statutory authority and violated the Corps' own regulations, but were also arbitrary and capricious, contrary to Plaintiffs' constitutional rights, and without observance of procedure required by law.  Defendants' actions and inactions have irreparably harmed and continue to threaten Plaintiffs' real property, facilities, tax base, customer base, and/or other proprietary interests with imminent and irreparable harm, including irreparable harm to the environment, economy, and general welfare of Plaintiffs and others located upstream of the Reservoirs within the Plaintiffs' boundaries.

## IV.     CLAIM FOR JUDICIAL REVIEW UNDER THE APA

18.     Plaintiffs reallege and incorporate by reference ¶¶ 1-17 of this Complaint.

19.     There are three distinct "final agency actions" that are the subject of this Complaint: (1) the Corps' November 2012 adoption of the WCM for the Reservoirs without including procedures in the WCM that prevent the Corps from exceeding the GOL boundaries of the Reservoirs; (2) the Corps' failure to revise the WCM following repeated flooding of non-GOL during the 2016/17 Flood Events; and (3) the Corps' failure to acquire sufficient GOL for the

Reservoirs following the adoption of the 2012 WCM and the 2016/17 Flood Events (hereinafter referred to as "Agency Action" Nos. 1, 2, and 3, respectively).

20.     Pursuant to 5 U.S.C. § 702, Plaintiffs, who are "Persons" under this statute, are suffering a legal wrong because of agency action, and are adversely affected or aggrieved by agency action and thus are entitled to judicial review.

21.     5 U.S.C. § 704 provides that final agency action is subject to judicial review. Agency Action Nos. 1 and 2 are "final agency actions" because the WCM determines rights and obligations and dictates how water will be handled in the Reservoirs.  The WCM is required by regulation (ER 1110-2-240)[3] and shows how the Corps interpreted its own regulations.  Agency Action Nos. 2 and 3 are failures to act and thus are also final agency actions.

22.     Each of these "agency actions" is circumscribed and discrete.  Complaining of these actions is not a broad programmatic attack, nor does it require the Court to be injected into day-to-day agency management.  The actions are "final" because they mark the consummation of the agency's decision-making process.   Furthermore, the actions are ones by which rights or obligations have been determined or from which legal consequences flow.  The Corps affected the rights of Plaintiffs outside the GOL boundaries through Agency Actions Nos. 1, 2, and 3.

23.     5 U.S.C. § 706 provides in relevant part that "to the extent necessary to decision and when presented," a reviewing court "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action."  With that authority, the reviewing court "shall":

(1)     compel agency action unlawfully withheld or unreasonably delayed; and

---

[3] ER 1110-2-240 at § 3.1 (May 30, 2016) (Where there are several projects in a drainage basin with interrelated purposes, a master manual must be prepared).

(2)      hold unlawful and set aside agency action, findings, and conclusions found to be

    (A)  arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
    (B)  contrary to constitutional right, power, privilege, or immunity;
    (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
    (D)  without observance of procedure required by law . . . .

24.      Agency Actions Nos. 1, 2, and 3 are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

**A.  <u>Actions that are Arbitrary, Capricious, and an Abuse of Discretion</u>**

25.      Agency Action Nos. 1 and 2 were arbitrary, capricious, and an abuse of discretion because they were not the product of reasoned decision-making. The Corps failed to consider its duty to and the rights of upstream property owners when making its decision(s) to adopt the WCM and implement the "Standing Instructions" for operation of the Reservoirs.  Additionally, the Corps failed to include in the WCM safeguards to prevent the flooding of property outside the GOL.  The Corps continues to use the outdated WCM, including its "Standing Instructions," and fails to revise it despite its knowledge of changed requirements resulting from developments in the Project area and changed environmental conditions within the Reservoirs.  Thus, the Corps' WCM continues to subject Plaintiffs to imminent and irreparable harm.

26.      Agency Action No. 3 was also arbitrary, capricious, and an abuse of discretion.  It was not the product of reasoned decision making because the Corps failed to consider its duty to and the rights of upstream property owners when operating the Reservoirs pursuant to the WCM with inadequate GOL to impound floodwater up to the Maximum Design Pools for the Reservoirs. Additionally, the Corps failed to purchase or obtain flowage easements for sufficient land up to the Maximum Design Pools resulting in the flooding of property outside the GOL.  Because the

7

Corps does not own sufficient GOL within the Reservoirs, it continues to subject Plaintiffs to imminent and irreparable harm.

### B. Actions Contrary to the Constitution

27.     As a direct, natural, and probable consequence of Defendants' adoption of the WCM without procedures that prevent the Corps from exceeding the GOL boundaries (Agency Action No. 1), the failure to revise the WCM now that changed conditions related to the limits of the GOL are evident (Agency Action No. 2), and the failure to acquire additional GOL following the Corps' November 2012 reevaluation of the Project (Agency Acton No. 3) Plaintiffs have been deprived of the use, occupancy, and enjoyment of their immovable property (and improvements) resulting in a permanent taking of their property for a public use, without payment of just compensation in accordance with the 5th Amendment of the U.S. Constitution.

28.     The Corps constructed and operates the Reservoirs for a public purpose, specifically to prevent flooding downstream along Buffalo Bayou and downtown Houston.

29.     During both the 2016/17 Flood Events, the Reservoirs operated as intended and detained floodwaters.  As the Corps planned, the Barker Reservoir exceeded the boundaries of the GOL during the Tax Day Flood, and both the Reservoirs exceeded the boundaries of the GOL and inundated private property with floodwater for weeks after Hurricane Harvey. Thus, the Corps intentionally impounded Government-controlled floodwaters for an extended period on private property within the Reservoirs, including property owned by Plaintiffs.  The Corps does not own any right to store floodwater on private property within the Reservoirs.

### C.  Action Contrary to Regulations (ER 1110-2-240) [4]

30.     Corps regulations require that "water control plans for projects owned and operated by [the Corps] shall be developed in concert with **all basin interests which may be impacted by or influence project regulation**." ER 1110-2-240 at § 1-5 (page 1-2) (emphasis added).  By not considering the needs of property owners within the "Fringe Areas," the Corps failed to develop the water control plan in accordance with ER 1110-2-240.

### D.  Actions Contrary to Regulations (ER 405-1-12) [5]

31.     Corps regulations state that "[u]nder the Joint Policy the Corps will take an adequate interest in lands . . . to accomplish all the authorized purposes of the project . . . ."   ER 405-1-12 § 2-12.  Corps regulations also state that land to be acquired in fee shall include, "lands below a guide contour line . . . established with a reasonable freeboard allowance above the top pool elevation for storing water for flood control . . .  and other purposes, referred to in this paragraph as 'full pool' elevation."  ER 405-1-12 § 2-12(a)(2).

32.     But the Corps acquired only lands approximately within the 100-year pool levels as those levels were estimated in the 1940s.  The remaining lands within the design pools of the Reservoirs were never acquired by the Corps, nor did the Corps obtain any flowage, drainage, or flood easements, or any other rights to inundate private or other non-federal GOL within the "Fringe Areas" of the Reservoirs (*i.e.*, approximately 8,700 acres between the 100-year flood pool

---

[4] Guidance on how to implement the policies contained in ER 1110-2-240 is provided in guidance documents, principally including but not limited to EM 1110-2-3600. ER 1110-2-240 at § 1.1(a) (page 1-1) (May 30, 2016). Corps guidance states that "[w]ater management activities must . . . be consistent with other legal requirements related to real estate . . . public use, and public safety." EM 1110-2-3600 at § 2.1.2.1 (page 2-4).  By not considering the needs of the "Fringe Areas," the Corps ignored laws regarding real estate and the "Takings" provision of the U.S. Constitution, and did not avoid risk to public safety.

[5] Basic policies and procedures related to the acquisition of lands for reservoirs are presented in ER 405-1-12. *See also* EM 1110-2-1420 (October 31, 1997).

and the maximum pool the Corps designed the Reservoirs to detain).  The Corps' continuing failure

to acquire additional GOL "above the top pool elevation for storing water for flood control"—the

Maximum Design Pool—is a clear violation of ER 405-1-12 § 2-12(a)(2).

33.     To remedy these arbitrary, capricious and unlawful actions, Plaintiffs seek

mandatory remedies pursuant to 5 U.S.C. § 706 including injunctive and declaratory relief.

## V.     REQUEST FOR PERMANENT INJUNCTIVE RELIEF

34.     Plaintiffs reallege and incorporate by reference ¶¶ 1-33 of this Complaint.

35.     Plaintiffs request a permanent injunction enjoining Defendants, and any officers,

agents, servants, attorneys, and all persons in active concert or participation with Defendants, who

receive actual notice of the injunction by personal service or otherwise, from impounding

floodwater on non-GOL and/or from implementing the portions of the WCM that enables the

impounding of floodwater on non-GOL, without payment of just compensation.

## VI.     REQUEST FOR DECLARATORY JUDGMENT

36.     Plaintiffs reallege and incorporate by reference ¶¶ 1-35 of this Complaint.

37.     28 U.S.C. §2201 provides that in a case of actual controversy within its jurisdiction,

this Court may declare the rights, obligations and other legal relations of any interested party.

38.     The Corps specifically acknowledged in its WCM that "[a]cquisition of real estate

was based on the original design" and that "pool levels in excess of Government-owned land

[would] damage residential developments adjacent to Government-owned lands,"[6] yet the Corps

did not account for this issue when it decided not to buy additional GOL for the Reservoirs at the

time the WCM was issued or when drafting its procedures, including the "Standing Instructions."

---

[6] U.S. Army Corps of Engineers, *Water Control Manual, Addicks and Barker Reservoirs, Buffalo Bayou and Tributaries, San Jacinto River Basin, Texas*, Previous Edition– April 1962; Revised Edition – Nov. 2012 at page 7-1 (Section 7-02(b) of the WCM).

39.     Despite the Corps' first-hand knowledge of the imminent harm and impending injury to Plaintiffs and their residents resulting from the WCM and its "Standing Instructions," the Corps continues to threaten the legal interests of Plaintiffs with imminent and irreparable injury, presenting an actual case or controversy between the parties that requires declaratory relief.

40.     Accordingly, pursuant to 28 U.S.C §§ 2201, 2202 and Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiffs seek a declaratory judgment that:

(1)     The Corps' WCM for the Reservoirs with procedures that do not adequately address the limits of GOL or the rights of landowners upstream of the dams within the "Fringe Areas" of the Reservoirs is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

(2)     The Corps' failure to revise the WCM to address changing conditions revealed by recent flooding beyond the limits of the GOL is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

(3)     The Corps' failure to acquire sufficient GOL within the Reservoirs to contain impounded waters from a predicted storm event is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

(4)     The Corps' use of land outside of the Corps' ownership of easement for the storage of water is not in accordance with legal requirements related to real estate and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights.

## VII.   ATTORNEYS' FEES

41.     Plaintiffs have retained the undersigned counsel to represent Plaintiffs in this action.  Plaintiffs seek to recover their reasonable attorneys' fee pursuant to Section 37.009 of the Texas Civil Practice & Remedies Code and 28 U.S.C. § 1988 as part of costs.

## VIII.   RELIEF REQUESTED

WHEREFORE, Plaintiffs request all relief requested in this Complaint, including:

A.      A permanent injunction as described in Paragraph 35 *supra*.;

B.      A declaratory judgment as described in paragraph 40(1) through 40(4) *supra*;

C.      An award of reasonable attorneys' fees and costs of suit; and

D.      Such other and further relief, legal or equitable, to which Plaintiffs may show themselves to be justly entitled.

> Respectfully submitted,
> */s/ Keith W. Lapeze*
> Keith W. Lapeze
> Attorney-In-Charge
> State Bar No. 24010176
> TXSD No. 24437
> keith@allawgp.com
> 601 Sawyer Street, Suite 650
> Houston, Texas 77007
> Telephone: (713) 739-1010
> Facsimile: (713) 739-1015

OF COUNSEL:
THE AL LAW GROUP, PLLC
David Tuckfield
State Bar. No. 00795996
david@allawgp.com
12400 Highway 71 West
Suite 350-150
Austin, Texas 78738
Telephone: (512) 576-2481
Facsimile: (512) 366-9949

Eric B. Storm
State Bar No. 24033244
TXSD No. 582319
eric@allawgp.com
11420 Bee Caves Road, Suite A-100
Austin, Texas 78738
Telephone: (512) 593-1881
Facsimile: (512) 276-6677

ATTORNEYS FOR PLAINTIFFS